UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MICHAEL ESPINOSA, et al. § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | SA-15-CV-879-XR |
| § | |
| STEVENS TANKER DIVISION, LLC, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns three motions that are pending in this case: (1) Defendant Stevens Tanker Division, LLC's Motion for Summary Judgment (Docket Entry 114); (2) Dispatcher Class' Motion for Partial Summary Judgment (Docket Entry 118); and (3) Plaintiff Michael Espinosa's Individual Motion for Partial Summary Judgment (Docket Entry 119). These motions have been referred to the undersigned for recommendation pursuant to Western District of Texas Local Rule CV-72 and Appendix C.

For the reasons set out below, I recommend that Defendant's Motion for Summary Judgment (Docket Entry 114) be **DENIED**, that the Dispatcher Class' Motion for Partial Summary Judgment (Docket Entry 118) be **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff Michael Espinosa's Individual Motion for Partial Summary Judgment (Docket Entry 119) be **GRANTED IN PART** and **DENIED IN PART**.

## I. Jurisdiction.

Plaintiff's suit alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, as amended. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. I have authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. Background.

Stevens Tanker Division, LLC ("Stevens") provides oil field services to its customers, including transporting liquids to and from oil and gas well sites and providing miscellaneous oil field services such as frack tank rentals, delivery and pick up of frack tanks, winch services, removal of drilling mud and pulling bottoms of water tanks to remove sludge. (Docket Entry 114, at 1, 3.) The nature of its business requires Stevens to employ dispatchers to ensure its fleet operates safely and efficiently. (Docket Entry 114, at 4.) Stevens employed Michael Espinosa and the opt-in plaintiffs (collectively referred to as "Plaintiffs") as dispatchers. (*Id.* at 1.)

Espinosa filed the instant FLSA collective action "on behalf of all similarly situated present and former employees of [Stevens] who were either misclassified and/or not properly paid for all overtime due and/or not paid for all hours worked." (Docket Entry 1, at 3.) Plaintiffs claim Stevens misclassified them as exempt employees and failed to pay overtime for work they performed in excess of forty hours per workweek. (Docket Entry 1, at 3.) Stevens claims that its dispatchers meet the requirements for the "administrative exemption" to the FLSA overtime pay requirement[1] and are, therefore, not entitled to any overtime pay. (Docket Entry 114, at 2.)

Although other aspects of Plaintiffs' job duties as Stevens dispatchers are largely contested, it is uncontested that dispatchers "obtained data from computer screens and telephone calls and entered the information into Excel spreadsheets"; used a tracking system that provided

---

[1] *See* 29 U.S.C. § 213; 29 C.F.R. §§ 541.200–.204 (2016).

the location of each truck, the identity of its driver, and the well site being serviced; maintained and updated the "Well Site Water Level Report"; and corresponded with customers and field personnel via email and phone. (Docket Entry 121, at 3.) Their general workweek is also undisputed: Steven's dispatchers generally worked one week "on" and one week "off." (Docket Entry 114, at 3; Docket Entry 118, at 1.) Each week "on" included seven 12-hour shifts, generally consisting of shifts from either 4:00 A.M. to 4:00 P.M. or 4:00 P.M. to 4:00 A.M., for a total of 84 hours per week worked. (Docket Entry 114, at 3; Docket Entry 118, at 18; Docket Entry 119, at 11).

Plaintiffs allege that because their work was clerical in nature, the administrative exemption does not apply, and they are entitled to at least 44 hours of overtime pay for each week worked. (Docket Entry 118, at 6.) Stevens denies this allegation, and both sides have sought summary judgment. (*See* Docket Entry 114, 118, and 119.)

### III. Legal Standards.

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if the record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party against whom summary judgment is sought may not rest on the allegations or denials in his pleadings, but must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is "genuine," and therefore sufficient to overcome a summary judgment motion, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).

IV. **Analysis.**

This Report and Recommendation addresses cross-motions for summary judgment. Espinosa filed two motions for partial summary judgment, one as representative of the dispatcher class and one concerning his individual claims. Espinosa's motions seek summary judgment on liability and liquidated damages. (Docket Entries 118 and 119.) Stevens' motion for summary judgment seeks summary judgment on liability and additionally argues that Espinosa's FLSA claim is barred, because he made no individual claim and his class claim is barred by limitations because he failed to opt-in as a member of the class. (Docket Entry 114, at 1.) This recommendation addresses in turn the issues of liability, liquidated damages, and the status of Espinosa's class and individual claims.

A. *Liability.*

"The FLSA establishes the general rule that employees must receive overtime compensation at one and one-half times the regular rate for hours worked in excess of 40 hours during a seven-day workweek." *Gallegos v. Equity Title Co. of Am., Inc.*, 484 F. Supp. 2d 589, 593 (W.D. Tex. 2007) (citing 29 U.S.C. § 207(a)). To establish a *prima facie* case for unpaid overtime compensation, an employee bringing a claim must prove by a preponderance of the

evidence the following four factors: (1) the existence of an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (citing *Harvill v. Westward Comm'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005)). Once the employee establishes a *prima facie* case, the burden shifts to the employer to show that the inference to be drawn from the employee's evidence is unreasonable. *Johnson*, 758 F.3 at 630. This may be done by proving that the employee falls within an exemption from the overtime requirement. *Id.*

Several categories of employees are exempt from FLSA overtime compensation provisions, including those employed in a "bona fide executive, administrative, or professional capacity." *See* 29 U.S.C. § 213. The "administrative exemption" is defined in 29 C.F.R. § 541.200. According to that provision, an individual is considered employed in an administrative capacity if they are (1) compensated on a salary basis of at least $455 per week; (2) their primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) their primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200 (2016).

Exemptions under the FLSA, including the administrative exemption, are "construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption." *Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441, 446 (W.D. Tex. 2016) (quoting *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014)). "The employer must prove facts by a preponderance of the evidence that show the exemption is 'plainly and

unmistakably' applicable." *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013).

Plaintiffs claim that the administrative employee exemption is not applicable to Stevens dispatchers because the dispatchers' primary duties were not office work directly related to Stevens' management or general business operations, and did not involve the exercise of discretion and independent judgment with respect to matters of significance. (Docket Entry 118, at 3.) Stevens disputes these claims, contending that the dispatcher position satisfies the requirements of the administrative employee exemption and the dispatchers are, therefore, properly classified as exempt employees. (Docket Entry 121, at 3–5.) The parties also dispute whether the dispatchers were entitled to overtime during training. The administrative exemption and training-period dispute are each addressed below.

1. *Does the administrative exemption apply to Stevens' dispatchers?*

As discussed above, to qualify for the administrative exemption, an employee must: (1) be compensated at a salary of at least $455 per week; (2) have a primary duty of performing office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) have a primary duty that includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200. The parties do not dispute that all Plaintiffs were compensated at a salary of at least $455 per week, which satisfies the first element of the administrative exemption. (*See* Docket Entries 114, at 20 and 122, at 2–3.) The second and third elements concern the nature of the employee's primary duty. An employee's primary duty is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700 (2014).

The second prong of the administrative-exemption test requires that the employee's primary duty be the performance of office work directly related to management or general business operations. 29 C.F.R. § 541.200. "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a) (2014). "Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b).

Stevens claims that Plaintiffs performed work related to the "safety and health" and "legal and regulatory compliance" categories listed in § 541.201(a). (Docket Entry 121, at 12.) It argues that dispatchers performed "a critical component to [of its] legal duty to monitory driver safety" under the Federal Motor Carrier Safety Act by:

- Serving as the driver's life line in an emergency, acting as a conduit of information and providing services the driver needed;

- Directing drivers to follow hydrogen sulfide protocol;

- Monitoring driver hours to ensure Department of Transportation compliance, dispatching only drivers with sufficient DOT hours, and arranging for shuttling drivers when they exceeded DOT hours;

- Resolving maintenance issues with drivers in the field;

- Helping drivers locate well locations; and

- Handing driver emergency situations by routing the driver back to the yard.

7

(Docket Entry 114, at 22–23.) Stevens argues that Plaintiffs' primary duty was "office work that was directly related to [Stevens'] operations and servicing its customers' needs." (*Id.* at 20.) It claims that Plaintiffs' primary duty was to "dispatch drivers and equipment in an assigned area," and it provides a three-page list of dispatcher job duties, with testimonial and/or documentary support for each. (*Id.* at 6–10.) In support of its position, Stevens cites to deposition excerpts, affidavits, and video footage depicting Ashleigh Magana, a dispatcher at Stevens, performing her duties as a dispatcher.[2] (Docket Entry 114, at 2; Docket Entry 114-3, at 143–46.)

Stevens further argues that the dispatchers "oversaw, coordinated, prioritized and dispatched Tanker Division's drivers and trucks to meet customer orders." (Docket Entry 114 at 21.) According to Stevens, this included analyzing well water levels; monitoring driver hours per Department of Transportation rules; communicating with customers and taking orders or complaints; communicating with drivers and Stevens' shop regarding available equipment to evaluate priorities in deciding what drivers and equipment to dispatch into the field to meet Stevens' customer's orders; planning routes to well sites and disposal facilities; communicating with field representatives; and dispatching drivers and equipment to remove fluids from fracking wells or dispatching drivers and equipment with the skill set to provide service work at producing wells or remove production water therefrom. (*Id.* at 21–22.)

---

[2] Stevens attached to its Motion as Exhibits J and K copies of videos purporting to show actual footage of Stevens dispatchers performing their job duties. (Docket Entry 113-3, at 143–46). Plaintiffs object to the use of these videos because they were made after Plaintiffs left the employment of Stevens. (Docket Entry 122, at 15.) The videos constituting Exhibits J and K were filmed on July 29, 2016. (Docket Entry 114-3, at 143–44.) Espinosa left his dispatcher position at Stevens in November 2014 and opt-in Mark Murray left his position in March 2016. (Docket Entry 122, at 15.) Because the videos were filmed at a time in which Plaintiffs were no longer employed by Stevens as dispatchers, the videos are of limited relevance. Accordingly, the undersigned has considered them, but has accorded them little weight in this analysis.

Plaintiffs, on the other hand, contend that their job duties did not include management or general business operations. (Docket Entry 122, at 4.) They argue that their primary job duties included interacting with Stevens' drivers, "monitoring electronic monitors and logs on computer screens to service customers according to the customers' guideline[s] and needs," monitoring telephone communications and computerized visual monitoring systems for drivers and wells. (*Id.* at 5.) Plaintiffs argue that dispatchers did not engage in management operations, but were themselves managed by dispatcher supervisors, William Hayes (Stevens' South Texas General Manager), and Floyd Tinsley (Stevens' Director of Field Operations). (*Id.*) Plaintiffs support their claims with affidavits and deposition testimony. (Docket Entry 118, at 12; Docket Entry 122, at 34).

The facts of this case are similar to those present in *Olibas v. John Barclay Native Oilfield Servs., LLC*, 3:11-CV-2388, 2014 WL 12602869 (N.D. Tex. Mar. 12, 2014). In *Olibas*, dispatchers sued their employer—a company providing commercial transportation services to pressure pumping companies in the oil and gas industry—for unpaid overtime compensation. Similar to the facts in this case, the company employed dispatchers and classified them as exempt.

The *Olibas* court found summary judgment to be inappropriate on this issue. 2014 WL 12602869, at *6. In that case, the court was presented with evidence that the dispatchers assisted in "running and servicing the heart of [the employer's] business" by "interfacing with customers to determine the scope of work, setting drivers' schedules to comport with customers' needs, monitoring drivers to ensure timely service, and acting as the first line of communication in emergencies." *Id.* The court also found that one of the dispatchers' primary duties involved "personnel management," which is one of the categories specifically set out in 29 C.F.R.

§ 541.201(b). *Id.* Despite this evidence, the court in *Olibas* eventually found that the evidence created factual disputes that were not for the court to resolve at the summary judgment stage of the proceedings. *Id.*

In this case, the evidence supporting application of the administrative exemption is not as strong as in *Olibas*. Although Plaintiffs were required to keep track of drivers' remaining DOT hours to ensure the driver they dispatched on a job could complete the task, Plaintiffs had no control over hiring, firing, or disciplining drivers or any other Stevens employees. (Docket Entry 122, at 8.) Additionally, it is not "plainly and unmistakably" clear that Plaintiffs performed work sufficiently related to safety and health and/or legal and regulatory compliance to rise to the level envisioned by § 541.201(b). *Meza*, 720 F3d at 581. Nevertheless, Stevens has brought forth evidence that could lead a reasonable jury to find that Plaintiffs performed office work directly related to Stevens' general business operations.[3] Because there is a genuine dispute of material fact with regard to prong two of the administrative exemption, summary judgment must be denied.

### 2. *Does the administrative exemption apply to training periods?*

Plaintiffs ask the Court to enter summary judgment on alleged overtime wages for weeks of training each of the dispatchers received when they began their dispatcher positions at Stevens. (Docket Entry 118, at 8–9.) Plaintiffs claim the training consisted of seven 12-hour shifts per week and that they were incorrectly paid salary for the weeks of training. (*Id.* at 9.)

---

[3] Stevens makes the argument that, because Plaintiffs did not make a proper jury demand under Federal Rule of Civil Procedure 38, this is a non-jury trial case and the Court should not consider any inferences a jury could draw. (Docket Entry 121, at 14.) It is true that a district court in a non-jury case has "somewhat greater discretion to consider what weight it will accord the evidence" at the summary judgment stage. *See In re Placid Oil Co.*, 932 F.2d 394, 397–98 (5th Cir. 1991). However, this greater discretion does not change the fact that there are disputed material issues as to the application of the administrative exemption, and thus that summary judgment is not appropriate. *See id.*

The administrative exemption does not apply to time spent in training for employment so long as the employee is not actually performing the duties of an administrative employee. 29 C.F.R. § 541.705. Plaintiffs claim they were not actually performing dispatcher duties during training and their responsibility was to "follow, shadow and observe the dispatch supervisor during the shift and learn from the dispatch supervisor's instructions," and that they are, therefore, entitled to overtime pay for 44 hours per week of training. (*Id.* at 9; Docket Entry 118-2, at 3.)

Stevens contends that the newly-hired dispatchers actually did perform dispatching duties during training, and also that they worked on a truncated work schedule. (Docket Entry 126, at 18.) In support, Stevens points to the deposition testimony of Espinosa, Dispatch Supervisor Hilton Ayala, and General Manager William Hayes. (Docket Entry 126, at 18; Docket Entry 126-1, at 20, 31–32; Docket Entry 121-1, at 98–99.) All three deponents testified that during the training period, dispatcher trainees worked Monday through Friday and less than the standard twelve-hour dispatcher shifts. (*Id.*) Espinosa himself stated that during the training period he worked "8:00 to 5:00 or 6:00 or so." (Docket Entry 121, at 9.) Hayes also testified that dispatcher trainees would work 8:00 to 4:00, with weekends off. (Docket Entry 127-12, at 6–7.) By contrast, Floyd Allen Tinsley, a field supervisor at Stevens, testified that trainees may work seven 12-hour shifts if they were working seven days on and seven days off, or they may work five 8-hour shifts or four 10-hour shifts if they were not receiving a week off in between. (Docket Entry 122-6, at 11–12.) In a post-deposition affidavit, Espinosa also stated that he worked 12-hour shifts during training. (Docket Entry 122-2, at 3.)[4]

---

[4] In his affidavit, Espinosa claims to clarify his deposition testimony by stating that he actually worked twelve-hour shifts during training and that he "confused the dispatch training [he] received at a prior employer . . . with the training [he] received at Stevens." (Docket Entry

11

The above evidence raises a genuine dispute whether trainees worked 12-hour shifts. Nevertheless, Stevens has not pointed to any evidence in the record that indicates the level of involvement newly-hired dispatchers had in the actual acts of dispatching—as opposed to observing dispatchers as they worked. To the contrary, Plaintiffs presented evidence that rather than actually performing dispatcher duties, they were to "follow, shadow and observe the dispatch supervisor during the shift and learn from the dispatch supervisor's instructions." (Docket Entry 118, at 9; Docket Entry 118-2, at 3; Docket Entry 119, at 6.) Because Stevens has presented no evidence that Plaintiffs actually dispatched during the training period, there is no disputed issue of material fact that the administrative exemption is inapplicable. However, because the parties presented conflicting evidence concerning the actual schedule of trainees and the number of hours worked during training, a genuine dispute exists as to the amount of damages, if any, to which Plaintiffs may be entitled for overtime wages during such training periods.

---

127-2, at 3–4.) Stevens objects to Plaintiffs' use of this declaration, as well as that of opt-in Plaintiff Murray, on the grounds that they constitute "sham" declarations offered for the sole purpose of creating a fact dispute to prevent summary judgment. (Docket Entry 121, at 5–6.) The sham-affidavit rule provides that a party "may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation." *Guerrero v. Total Renal Care, Inc.*, 932 F. Supp. 2d 769, 776 (W.D. Tex. 2013) (quoting *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000)). The sham-affidavit rule "is applied sparingly" and may be invoked only where there is "some inherent inconsistency between an affidavit and a deposition." *Guerrero*, 932 F. Supp. 2d at 776 (quoting *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 749–50 (S.D. Tex. 2012)). Isolated contradictions go to the affidavit's weight rather than its admissibility. *Guerrero*, 932 F. Supp. 2d at 776.

Neither declaration should be struck under the sham-affidavit rule. Murray's declarations in his affidavit and deposition testimony regarding the hours worked during training are not inconsistent. (*See* Docket Entry 118-4, at 3; Docket Entry 127-11, at 7.) Espinosa's declarations and his deposition testimony do conflict; however, he sufficiently explained in his declaration the reason for his conflicting testimony. Although Stevens sets out other instances in which it claims Espinosa's and Murray's declarations contradict their respective deposition testimony (Docket Entry 121, at 7–9), the undersigned finds no inherent inconsistency and the declarations need not be stricken.

B.  *Liquidated Damages.*

An employer who violates 29 U.S.C. § 207 is liable to the affected employees in the amount of their unpaid overtime compensation and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). Although liquidated damages are mandatory under section 216, the Portal-to-Portal Act "allows a district court to exercise its discretion to refuse liquidated damages if the employer proves that 'the act or omission giving rise to such action was in good faith and he had reasonable grounds for believing that his act or omission was not a violation of the Act . . . ' " *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 357 (5th Cir. 1990) (quoting 29 U.S.C. § 260); *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016). "[G]ood faith requires some duty to investigate potential liability under the FLSA." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979).

Stevens argues that it has proven good faith based upon its corporate representative's consultation with counsel and industry standards prior to classifying the dispatchers as exempt employees. (Docket Entry 121, at 2.)[5] Plaintiffs counter that Stevens' corporate representative classified the dispatchers as exempt without experience or guidance in making such a determination, and that such actions do not satisfy the good faith requirement. (Docket Entry 118, at 3–4.)

Given that summary judgment is largely inappropriate on liability, it is also inappropriate on the issue of liquidated damages. In any event, Stevens has presented sufficient evidence to

---

[5] Stevens also argues that Plaintiffs must first prove a willful violation of the FLSA before the burden shifts to Stevens to show good faith, and that Plaintiffs have neither adequately pled nor proven a willful violation. (Docket Entry 121, at 2.) This is incorrect. "Although the plaintiff has the burden of proving willfulness in the statute of limitations context, the defendant has the burden of proving good faith and reasonable grounds in the liquidated damages context." *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 925 (E.D. La. 2009) (citing *Lee v. Coahoma Cty., Miss.*, 937 F.2d 220, 227 (5th Cir. 1991)).

13

raise a dispute of material fact as to whether any misclassification was willful. Stevens' corporate representative testified that he did, in fact, consult with Stevens' legal counsel. (Docket Entry 121, at 2.) He also considered industry standards when making his determination. (*Id.*) This is some evidence of good faith and reasonable grounds for Stevens believing it was not violating the FLSA by classifying Plaintiffs as exempt employees. The District Court should therefore deny Plaintiffs' motion for summary judgment as to liquidated damages.

### C. *Espinosa's Individual and Class Claims.*

For reasons similar to those set out above, Espinosa seeks summary judgment on his individual FLSA claim. Stevens denies that Espinosa ever made an individual claim, and it seeks summary judgment on Espinosa's class claim, alleging that such a claim is barred by the statute of limitations because Espinosa never opted into the class. (Docket Entry 114, at 16–20.) Stevens claims Espinosa never opted into the class because he (1) neither signed nor verified the Complaint, and (2) he did not file a document with the Court showing his assent to be a class member. (*Id.*) Espinosa counters that his actions in this litigation sufficiently demonstrate his class participation and consent to participate as a class member, and also that he asserted an individual claim for unpaid overtime when he filed the complaint. (Docket Entry 131, at 3.) For the reasons set out below, the Court should reject Espinosa's class claim, but allow his case to go forward on his individual claim.

#### 1. *Espinosa's Class Claim.*

As to his class claim, Espinosa argues that a signed consent form is not required to properly opt-in to a collective action, and alternatively that his declaration attached to the motion for class certification is sufficient to constitute written consent. (Docket Entry 131, at 5–6.) Espinosa's argument fails. A plaintiff must file a written, signed consent to bring a claim in a

14

collective action under the FLSA. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Written, signed consent must be filed even if a claimant is specifically named as a party plaintiff in the complaint. *See* 29 U.S.C. § 256(a). "[C]ourts construe [§ 256(a)] to do what it says: require a named plaintiff in a collective action to file a written consent to join the collective action." *Frye v. Baptist Mem. Hosp., Inc.*, 495 Fed. App'x 669, 675 (6th Cir. 2012). *See also Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) (same); *In re Food Lion, Inc.*, Nos. 94–2360, 94–2645, 95–1274, 97–1443, 97–1444, 1998 WL 322682, at *13 (4th Cir. June 4, 1998) (same).

Espinosa filed the complaint on October 12, 2015. (Docket Entry 1.) The complaint states that Espinosa "brings this claim on behalf of all similarly situated present and former employees of Defendant who were either misclassified and/or not properly paid for all overtime due and/or not paid for all hours worked." (*Id.* at 3.) Although Espinosa was specifically named as a party plaintiff in the complaint, he did not file written consent under § 216 to become a member of the class.

On August 5, 2016, the Court granted conditional class certification, defining the class as "[a]ll past or present salaried dispatchers who worked for Defendant any time since October 12, 2012, at any of Defendant's locations, who were not paid overtime compensation." (Docket Entry 40, at 9.) The Court set a deadline for opting-in that was sixty days from the date of mailing of the notice to potential class members. (*Id.*) The opt-in deadline was eventually set at October 21, 2016. (Docket Entry 48, at 3.) Sixteen dispatchers filed opt-in consents prior to the opt-in deadline; Espinosa was not one of them. (*See* Docket Entry 114, at 1.) Instead, Espinosa did not file his opt-in consent until June 30, 2017, over eight months past the opt-in deadline and

after Stevens sought summary judgment. (Docket Entry 128; *see* Docket Entry 131, at 1.) This opt-in was untimely and invalid.

Espinosa relies on *Allen v. Atlantic Richfield Co.* for the proposition that "parties named in a suit, who have hired a lawyer to file a complaint on their behalf, have clearly indicated their consent to suit." (Docket Entry 131, at 3 (quoting *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131, 1134 (5th Cir. 1984).) *Allen*, however, did not involve a collective action; it involved twenty-two plaintiffs who brought individual actions. *See* 724 F.2d at 1134. In a collective action like this case, potential class members are subject to the opt-in requirements of 29 U.S.C. § 216. Contrary to Espinosa's argument, neither his declaration in support of the Motion for Conditional Class Certification (Docket Entry 23, at 8–9) nor his deposition given in this case can satisfy the requirements of 29 U.S.C. § 216(b). And his June 30, 2017 consent was untimely. Accordingly, Espinosa is not a member of the class.

*2. Espinosa's Individual Claim.*

Although Espinosa failed to bring a class claim, he has sufficiently stated an individual claim to go forward. Federal Rule of Civil Procedure 8 sets out the general rules of pleading. It requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Although the rule encourages brevity, the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). Such "fair notice" does not require intricately detailed factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor does Rule 8 require identification of the pleader's precise legal theory. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011). In fact, even asserting an incorrect legal theory is not always be fatal.

*See Johnson v. City of Shelby*, 135 S. Ct. 346, 346–47 (2014). Ultimately, courts must construe pleadings "so, as to do justice," and drafting mistakes alone should not deny a party justice. *See* FED. R. CIV. P. 8(e); *Carter v. Ford Motor Co.*, 561 F.3d 562, 565–66 (6th Cir. 2009).

Considered under these rules, Espinosa's complaint states both sufficient factual allegations and adequate legal theory to state an individual claim. As to factual allegations, the complaint states that Plaintiff Espinosa was misclassified as an exempt employee by Stevens, worked 84 hours per week as a dispatcher, and was not paid for overtime or wages for all hours worked. (*Id.* at 2–3.) As to legal theory, Espinosa alleged that Stevens violated 29 U.S.C. §§ 206, 207, and 215(a)(2) "by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which they were employed." (*Id.* at 4.) Espinosa further alleged that Stevens acted "knowingly, willfully, or with reckless disregard" when failing to pay overtime "with respect to Plaintiff." (*Id.* at 3.) The complaint sufficiently states an individual claim—under Rule 8. Because the complaint was filed on October 12, 2015, it was well within the applicable statute of limitations. Accordingly, Stevens' motion for summary judgment should be denied as to Espinosa's individual claim. And for the reasons set out in Part IV. A., *supra*, factual disputes preclude summary judgment for Espinosa as to anything except liability as to his training period. Moreover, nothing in the record indicates that Stevens did not have fair notice and a full opportunity to litigate Espinosa's individual claim. The interests of justice thus require that Espinosa's individual claim be allowed to go forward.

## V. Conclusion and Recommendation.

Based on the foregoing, I recommend that Defendant Steven Tanker Division, LLC's Motion for Summary (Docket Entry 114) be **DENIED**, that the Dispatcher Class's Motion for Partial Summary Judgment (Docket Entry 118) be **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff Michael Espinosa's Individual Motion for Partial Summary Judgment (Docket Entry 119) be **GRANTED IN PART** and **DENIED IN PART**. The Dispatcher Class's Motion for Partial Summary Judgment and Plaintiff Michael Espinosa's Individual Motion for Partial Summary Judgment should both be **GRANTED** as to liability for overtime wages earned during dispatcher training and. They should be **DENIED** in all other respects.

## VI. Instructions for Service and Notice of Right to Object.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to

file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on November 9, 2017.

Henry J. Bemporad
United States Magistrate Judge